**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ORLANDO BAEZ, | : | |
| *Plaintiff,* | : | |
| | : | CIVIL ACTION |
| v. | : | NO. 23-1827 |
| | : | |
| ANTHONY LETIZIO, et al., | : | |
| | : | |
| *Defendants.* | : | |

## ORDER

AND NOW, this _____ day of _____, 2024, upon consideration of the Commonwealth Defendants' Motion to Partially Dismiss Plaintiff's First Amended Complaint (ECF No. 31) and any response thereto, it is hereby **ORDERED** that the Motion is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's § 1983 claims against Commonwealth Defendants in their official capacities are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that Plaintiff's § 1983 claims against Defendant Huner in her individual capacity are **DISMISSED WITH/WITHOUT PREJUDICE**.

BY THE COURT:

_____
GERALD J. PAPPERT, J.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ORLANDO BAEZ, | : | |
| *Plaintiff,* | : | |
| | : | CIVIL ACTION |
| v. | : | NO. 23-1827 |
| | : | |
| ANTHONY LETIZIO, et al., | : | |
| | : | |
| *Defendants.* | : | |

**COMMONWEALTH DEFENDANTS' MOTION TO**
**PARTIALLY DISMISS PLAINTIFF'S FIRST AMENDED**
**COMPLAINT**

      Defendants, Britney Huner and Monique Savage (collectively "Commonwealth

Defendants"), by counsel, hereby move to partially dismiss Plaintiff's First Amended Complaint

pursuant to Federal Rules of Civil Procedure 12(b)(1) & (6) for the reasons contained in the

accompanying memorandum of law.

                                  Respectfully submitted,

                                  MICHELLE A. HENRY
                                  Attorney General

            By:    *s/ Brendan Mullen*
                                  BRENDAN MULLEN

Office of Attorney General           Deputy Attorney General
1600 Arch Street, Suite 300         Attorney ID 334199
Philadelphia, PA 19103
Phone: (267) 559-1016            NICOLE R. DITOMO
                                  Chief Deputy Attorney General
bmullen@attorneygeneral.gov      Civil Litigation Section

                                  Counsel for Commonwealth Defendants

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ORLANDO BAEZ, | : | |
| *Plaintiff,* | : | |
| | : | CIVIL ACTION |
| v. | : | NO. 23-1827 |
| | : | |
| ANTHONY LETIZIO, et al., | : | |
| | : | |
| *Defendants*. | : | |

**MEMORANDUM OF LAW IN SUPPORT OF
COMMONWEALTH DEFENDANTS' MOTION TO
PARTIALLY DISMISS PLAINTIFF'S FIRST AMENDED
<u>COMPLAINT</u>**

Commonwealth Defendants, through counsel, respectfully submit this memorandum of law in support of Commonwealth Defendants' Motion to Partially Dismiss Plaintiff's First Amended Complaint.

## I.       INTRODUCTION & PROCEDURAL BACKGROUND

*Pro se* Plaintiff, Orlando Baez, an inmate at the State Correction Institution at Phoenix ("SCI PHX") filed his First Amended Complaint, under 42 U.S.C. § 1983, alleging that Commonwealth Defendants violated his First and Eighth Amendment rights by failing to provide him adequate medical care. *See* ECF No. 31, ¶ 13. The medical care in question appears to be bringing Plaintiff to a follow-up appoint with a Lupus specialist at Temple University Hospital. *Id.* ¶ 76. Plaintiff sues the Commonwealth Defendants in their individual and official capacities and seeks declaratory and injunctive relief as well as monetary damages. *Id.* ¶¶ 12, 110-119.

## II.       RELEVANT FACTS

Plaintiff directs the bulk of his First Amended Complaint against non-Commonwealth Defendants, Letizio and Kaminsky. However, the allegations directed toward Commonwealth Defendants relate to a follow-up appointment between Plaintiff and his Lupus specialist.

Specifically, Plaintiff was recommended a follow-up Lupus treatment at Temple University Hospital in January 2022. *Id.* ¶ 82. Plaintiff filed a request slip in August 2022 and a grievance in March 2022 regarding the denial of his follow-up Lupus treatment/appointment. *Id.* ¶¶ 76, 82. Defendant Savage responded to Plaintiff's grievance that "[t]here was no appointment scheduled for the date you list." *Id.* ¶ 82. Defendant Savage further responded in June 2022 to Plaintiff's grievance regarding his January 2022 appointment with "You were not denied an appointment in Jan. 2022, you refused the follow-up visit. Additionally, another rheumatology follow-up visit was ordered and approved by the collegial team[] that date not to be disclosed to you." *Id.* ¶ 84. Plaintiff filed a new grievance on this incident and Defendant Savage, again, responded to Plaintiff stating "There was no appointment scheduled for the date you list." *Id.* ¶ 85. Defendant Savage further indicated that outside specialists can make recommendations, which are reviewed by the collegial team. *Id.* ¶ 87. Further, Defendant Savage notified Plaintiff that a rheumatology consult appointment was approved and scheduled by Dr. Letizio and the collegial team. *Id.*

Plaintiff's allegations against Defendant Huner relate to her response in March 2022 to one of Plaintiff's grievances in which she stated: "Medical will see you when you place a sick call and you will be evaluated and treated appropriately based on evidence based medicine. It has been explained to you that when you [go] out to see a [s]pecialist their plan is only a [recommendation], [] the final okay will be done by the medical providers here." *Id.* ¶ 91. Jumping ahead to August 2022, Plaintiff alleges Defendant Huner violated DOC policy DC-135A by failing to provide a response to Inmate's request to staff member within 5 days.  *Id.* ¶ 92. Instead, Defendant Savage responded in to Plaintiff's inmate request stating that there was no interference with his medical care. *Id.*

2

Lastly, Plaintiff avers his sister made numerous calls to Temple Hospital and connected with "Mr. Kyle Williams" who is a Supervisor for the Temple Lupus Center in August 2022. *Id.* ¶ 98. Accordingly, Mr. Williams told Plaintiff's sister, who then told Plaintiff, that he was still a patient in their system. *Id.* Mr. Williams also informed Plaintiff's sister that the Doctor made a recommendation for Plaintiff to return within three months from his October 2021 visit. *Id.* ¶ 100.

## III.    STANDARDS OF REVIEW

### A.   Rule 12(b)(1), Lack of Subject Matter Jurisdiction

A Rule 12(b)(1) motion is the proper mechanism for raising the issue of whether Eleventh Amendment immunity bars federal jurisdiction. *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 694 n.2 (3d Cir. 1996) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-100 (1984)) (Eleventh Amendment is a jurisdictional bar which deprives federal courts of subject matter jurisdiction). When a motion to dismiss is based on lack of subject matter jurisdiction in addition to other defenses, "[a]n actual determination must be made whether subject matter jurisdiction exists before a court may turn to the merits of the case." *Tagayun v. Stolzenberg*, 239 F.App'x. 708, 710 (3d Cir. 2007); *see also Burch v. Penn. Dep't of Pub. Welfare*, 2005 WL 2666491, at *1 (M.D. Pa. Oct. 19, 2005), *aff'd*, 197 F.App'x. 101 (3d Cir. 2006) (noting that Eleventh Amendment immunity is a "threshold issue" for the court).

### B.   Rule 12(b)(6), Failure to State a Claim

Under Fed. R. Civ. P. 12(b)(6), following the Supreme Court decisions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), pleadings standards in federal court have shifted from simple notice pleading to a more heightened form of pleading that requires a plaintiff to plead more than the possibility of relief to survive a motion to

dismiss. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009); *Phillips v. County of Allegheny*, 515 F.3d 224, 230 (3d Cir. 2008).

It is "no longer sufficient to allege mere elements of a cause of action; instead a complaint must allege facts suggestive of the proscribed conduct." *Id.* at 233 (citing *Twombly*) (cleaned up). Thus, when presented with a motion to dismiss for failure to state a claim, the district court should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The court accepts the complaint's well-pleaded facts as true but should disregard legal conclusions. *Iqbal*, 556 U.S. at 678-79. Second, the court determines whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." *Id.* A complaint must do more than allege the plaintiff's entitlement to relief; it must "show" such an entitlement with its facts. *Id.*; *see Phillips*, 515 F.3d at 234-35; *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). In ruling on a motion to dismiss under Rule 12(b)(6), a court should "draw on its judicial experience and common sense" and dismiss claims where the facts merely suggest a possibility of liability, rather than "plausibly establish" it. *Iqbal*, 556 U.S. at 679.

## IV.   ARGUMENT

### A. Eleventh Amendment Immunity Bars Plaintiff's Claims against Commonwealth Defendants in their Official Capacities.

Plaintiff's section 1983 claims against Commonwealth Defendants in their official capacities (*see* Am. Compl., ¶ 12.) are barred under the Eleventh Amendment to the United States Constitution. This is because absent consent by the state, congressional abrogation, or waiver, the Eleventh Amendment[1] bars federal subject matter jurisdiction of suits by private parties against

---

[1] The Eleventh Amendment provides, "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."

states, state agencies and state officials in their official capacities. *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 267-70 (1997); *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 (1996); *Pennhurst State Sch. & Hosp.,* 465 U.S. at 100-01. The bar extends to suits against departments or agencies that have no existence apart from the state. *Laskaris v. Thornburgh*, 661 F.2d 23, 25 (3d Cir. 1981) (citation omitted).

Eleventh Amendment immunity "is designed to preserve the delicate and 'proper balance between the supremacy of federal law and the separate sovereignty of the States.'" *Id.* (quoting *Alden v. Maine*, 527 U.S. 706, 757 (1999)). This immunity bars suits against the states and state agencies "regardless of the relief sought." *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993). Although states may waive immunity, Pennsylvania has expressly withheld its consent to be sued. *Lavia v. Pa. Dep't of Corr*., 224 F.3d 190, 195 (3d Cir. 2000) (citing 42 Pa. C.S. § 8521(b)). Both Commonwealth Defendants are alleged to be employees of the Pennsylvania DOC, *see* Am. Compl., ¶¶ 8-11, which is an executive agency of the Commonwealth. *See id.*; 71 P.S. §§ 61, 732-102.  A claim against a state government official, in his or her official capacity, is "no different from a suit against the State itself" because it "is not a suit against the official but rather is a suit against the official's office." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).

Courts have developed a limited exception to a state's Eleventh Amendment immunity for certain claims brought under Section 1983. To "ensure[ ] that state officials do not employ the Eleventh Amendment as a means of avoiding compliance with federal law." *see Puerto Rico Aqueduct*, 506 U.S. at 146, a federal court "may enjoin state officials to conform their future conduct to the requirements of federal law." *Quern v. Jordan*, 440 U.S. 332, 337 (1979). This exception allowing certain kinds of declaratory or injunctive relief against state officials in their

official capacity – initially noted in *Ex Parte Young*, 209 U.S. 123 (1908) – is "narrow," in that it "applies only to prospective relief, [and] does not permit judgments against state officers declaring that they violated federal law in the past." *Puerto Rico Aqueduct*, 506 U.S. at 146; *see also Lacassange v. Chapuis*, 144 U.S. 119, 124 (1982) (the purpose of injunctive relief is to afford preventative relief, not correct past wrongs). "In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (quoting *Idaho*, 521 U.S. at 296 (O'Connor, J., concurring in part and concurring in judgment)).

Additionally, under Article III of the United States Constitution, to establish federal court jurisdiction "an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." *Arizonans for Official English v. Arizona*, 520 U.S. 43, 67 (1997). "If an intervening circumstance deprives the plaintiff of a 'personal stake in the outcome of the lawsuit,' at any point during litigation, the action can no longer proceed and must be dismissed as moot." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 72 (2013) (quoting *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477-78 (1990)). However, mootness can be overcome "when a challenged action is (1) too short in duration 'to be fully litigated prior to its cessation of expiration'; and (2) 'there [is] a reasonable likelihood that at the same complaining party would be subjected to the same action again.'" *Id.* (quoting *Abdul-Akbar v. Watson*, 4 F.3d 195, 206 (3d Cir. 1993)).

In this case, the only grounds for pursing the type of forward-looking relief available under *Ex Parte Young* are entirely unreasonable because it would force the Court to delve into "complex and intractable problems of prison administration." *Brathwaite v. Phelps*, 602 F.App'x 847, 849

(3d Cir. 2015). Specifically, it would involve this Court delving into the administrative task of arranging medical appointments for Plaintiff and to have all Defendants "STOP the retaliation against Plaintiff Baez immediately." *See* Am. Compl., ¶ 111.

Furthermore, it is not clear if Plaintiff's request for injunctive relief raises an ongoing violation of his constitutional rights which would warrant equitable relief. *See Puerto Rico Aqueduct*, 506 U.S. at 146 (§ 1983 does not allow declaratory relief to past conduct). Plaintiff claims that he has been denied medical care for 17 ½ months. *See* Am. Compl., ¶ 93. But 17 and ½ months from his purported scheduled follow-up appoint in January 2021 would have been mid-July 2022. Thus, Plaintiff's claim for relief appears to be for actions or omissions which occurred in the past.

Therefore, Plaintiff's causes of action against Commonwealth Defendants in their official capacities must be dismissed with prejudice, for lack of subject matter jurisdiction.

### B. Commonwealth Defendants in Their Official Capacities are Not 'Persons' Subject to Suit for Damages under § 1983.

Separate and apart from Eleventh Amendment immunity, to the extent Commonwealth Defendants are sued in their official capacities for damages under 42 U.S.C. § 1983, the claims must fail, as state employees in their official capacities are not considered "person[s]" amenable to suit for purposes of a damages claim under § 1983. *Will*, 491 U.S. at 69-71, & n.10 ("We hold that neither a State nor its officials acting in their official capacities are 'persons' under § 1983."); *see also Zelinski v. Pa. State Police*, 282 F.Supp.2d 251, 264 n.14 (M.D. Pa. 2003), *aff'd in part*, *vacated in part on other grounds*, 108 Fed. Appx. 700 (3d Cir. 2004) (same). The DOC is an executive agency of the Commonwealth, 71 P.S. §§ 61, 732-102, and each defendant is a DOC employee. *See Lavia*, 224 F.3d at 195; *see also* Am. Compl. ¶¶ 8-11. As employees of a

Commonwealth executive agency, they may not be sued in their official capacities for damages although the First Amended Complaint seeks exactly that.

### C. Plaintiff Fails to Allege the Personal Involvement of Defendant Huner.

It is well-settled that an individual § 1983 defendant "must have personal involvement in the alleged wrongs." *Rode v. Dellacripete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *see also Iqbal*, 556 U.S. at 676 ("Because vicarious liability is inapplicable to § 1983 suits, a plaintiff must plead that each Government-official defendant, through the officials' own individual actions, has violated the Constitution."). Crucially, personal involvement has to be pled at the outset, *see Rode*, 845 F.2d at 1207, and the plaintiff "must portray specific conduct by state officials which violates some constitutional right." *Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 222 (3d Cir. 2015).

The allegations against Defendant Huner in the First Amended Complaint do not meet the above standards.  For one, Defendant Huner is rarely mentioned in the First Amended Complaint, and her involvement appears merely to be in issuing responses to Plaintiff's grievances and requests to staff members. *See* Am. Compl., ¶¶ 88-93, 101. Further, Plaintiff does not identify how Defendant Huner would be the one to approve or deny Plaintiff's medical care. Instead, it appears that Defendant Huner merely informed Plaintiff that the specialist's plan for a follow-up appoint was only a recommendation and that the non-Commonwealth Defendant medical providers at SCI PHX made the final decision as to whether or not Plaintiff required a follow-up appointment. *Id.* ¶ 91. Plaintiff's own recounting of his allegations, at best, alleges a thread-bare assertion of personal involvement on Defendant Huner's behalf.

### D. Plaintiff Has Not Stated a Claim for Deliberate Indifference Against Defendant Huner.

To establish a claim for deliberate indifference under the Eighth Amendment based on medical care, a plaintiff must show deliberate indifference to a serious medical need. *Estelle v.*

*Gamble*, 429 U.S. 97, 106 (1976). A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987). To act with deliberate indifference to such a medical need is to recklessly disregard "a substantial risk of serious harm." *Farmer v. Brennan*, 511 U.S. 825, 839 (1994). Deliberate indifference may be shown by "intentionally denying or delaying medical care." *Giles v. Kearney*, 571 F.3d 318, 330 (3d Cir. 2009) (quoting *Estelle*, 428 U.S. at 104). "The question under the Eighth Amendment is whether prison officials, acting with deliberate indifference, exposed a prisoner to a sufficiently substantial 'risk of serious damages to his future health.'" *Id.* (quoting *Farmer*, 511 U.S. at 843).

"[A]bsent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official … will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference." *Davis v. Prison Health Services, Inc.*, 558 F.App'x. 145, 150 (3d Cir. 2014) (quoting *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004)).

In *Davis*, an inmate filed a civil rights action against commonwealth defendants, an Administrator and a Superintendent, and medical defendants based on his medical care. *Davis*, 558 F.App'x at 146. Specifically, Davis alleged that his treatment for diabetes had been discontinued by the medical defendant without notifying or consulting him. *Id.* Davis then submitted a grievance stating he suffered a stroke as a result of his lack of medical care and demanded he receive his medication. *Id.* Davis alleged in his complaint that he suffered a second stroke and experienced "some loss of motor control", which Davis attributed to being taken off of his medication. *Id.* Davis further claimed that the physician medical defendant, by taking Davis off his diabetes

medicine, attempted to kill him. *Id.* The District Court granted summary judgment for the commonwealth defendants, reasoning that Davis had not demonstrated their personal involvement. *Id.* at 148. Davis' argued that the commonwealth defendants demonstrated deliberate indifference by failing to order the restoration of Davis' diabetes medicine in response to his grievance. *Id.* at 150. The Third Circuit held that "correctional defendant-administrators who were not themselves physicians cannot be 'considered deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor.'" *Id.*; (quoting *Durmer v. O'Carroll*, 991 F.2d 64 (3d Cir. 1993)). As such, the Court ruled in favor of the commonwealth defendants because their involvement in the matter consisted of nothing more than "reviewing his grievance and deferring to the judgment of medical personnel." *Id.*

Defendant Huner, a Corrections Health Care Administrator, was not personally involved in Plaintiff's medical treatment, or purported lack thereof. Rather, Defendant Huner's involvement in this matter was limited to responding to grievances and requests submitted by Plaintiff. *See* Am. Compl., ¶¶ 76, 90, 91. Defendant Huner informed Plaintiff that "Medical will see you when you place a sick call and you will be evaluated and treated appropriately based on evidence based medicine. It has been explained to you that when you [go] out to see a Specialist their plan is only a [recommendation], in (*sic*) the final okay will be done by the medical provider here." *See* Am. Compl., ¶ 91. Thus, deferring to the non-Commonwealth Defendants decisions to schedule a follow-up appointment was entirely reasonable for Defendant Huner, who is not a medical doctor.

### E. Plaintiff Fails to State a Claim for Retaliation Against Defendant Huner.

A plaintiff asserting a First Amendment retaliation claim under § 1983 must show (a) that he engaged in a protected activity; (b) that he suffered an "adverse action"; and (c) a causal link

10

between the protected activity and the adverse action. *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003); *Rauser v. Horn*, 241 F.3d 330, 333-34 (3d Cir. 2001). To qualify as adverse, an action must be sufficient "to deter a person of ordinary firmness from exercising his First Amendment rights." *Allah v. Seiverling*, 229 F.3d 220, 225 (3d Cir. 2000) (internal citations and quotations omitted). Moreover, the retaliatory conduct does not need to be significant, "but it must be more than de minimis." *McKee v. Hart*, 436 F.3d 165, 170 (3d Cir. 2006) (quoting *Bart v. Telford*, 677 F.2d 622, 625 (7th Cir. 1982).

Merely denying an inmate's grievance is not an "adverse action" for retaliation purposes as it does not deter a person of ordinary firmness from exercising their constitutional rights. *Owens v. Coleman*, 629 F.App'x. 163, 167 (3d Cir. 2015); *see Burgos v. Canino*, 641 F.Supp.2d 443, 455 (E.D. Pa. 2009), *aff'd per curiam*, 358 F.App'x. 302, 306-07 (3d Cir. 2009). In *Owens*, the plaintiff filed a § 1983 claim for deliberate indifference and retaliation based on him slipping and falling in his cell due to a faulty shower. *Id.* at 165. Plaintiff filed grievances about the faulty shower after his fall. *Id.* at 166. Plaintiff's claim for retaliation was premised, in part, on the fact that the defendants "denied his grievances as retaliation for filing those grievances in the first place…." *Id.* at 167. However, the Third Circuit held that "[t]he denial of grievances is not an 'adverse action' for retaliation purposes. *Id.* at 167; *see Burgos*, 641 F.Supp.2d at 455.

Here, Defendant Huner's involvement is limited to responding to Plaintiff's grievances/requests. *See* Am. Compl., ¶¶ 90-91. Though Defendant Huner's responses did not grant the relief Plaintiff wanted, they do not amount to retaliation in violation of the First Amendment. Furthermore, as Defendant Huner explained in her responses the approval of a medical appointment is done by the medical providers at SCI PHX, not Defendant Huner. *Id.* ¶ 91.

As such, Plaintiff has not stated facts to adequately allege a violation of the First Amendment.

## V.        CONCLUSION

For the foregoing reasons, Commonwealth Defendants respectfully request that this Court grant their Motion to Partially Dismiss Plaintiff's First Amended Complaint in the form of Order appended hereto.

Respectfully submitted,

MICHELLE A. HENRY
Attorney General

By:      *s/ Brendan Mullen*
_____

BRENDAN MULLEN
Deputy Attorney General
Attorney ID 334199

Office of Attorney General
1600 Arch Street, Suite 300
Philadelphia, PA 19103
Phone: (267) 559-1016

bmullen@attorneygeneral.gov

NICOLE R. DITOMO
Chief Deputy Attorney General
Civil Litigation Section

Counsel for Commonwealth Defendants

12

## CERTIFICATE OF SERVICE

I, Brendan Mullen, Deputy Attorney General for the Commonwealth of Pennsylvania, Office of Attorney General, hereby certify that on August 26, 2024, I caused to be served a true and correct copy of the foregoing ***Commonwealth Defendants' Motion to Partially Dismiss Plaintiff's First Amended Complaint*** to the following:

**VIA U.S. MAIL**
**Smart Communications/PADOC**
**Orlando Baez, CB-3721**
**SCI Phoenix**
**PO Box 33028**
**St. Petersburg, FL 33733**
*Pro Se Plaintiff*

 *s/ Brendan Mullen*
**BRENDAN MULLEN**
Deputy Attorney General