### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Orlando Baez, | |
| *Plaintiff,* | CIVIL ACTION |
| v. | NO. 23-1827 |
| Anthony Letizio, et al., | |
| *Defendants.* | |

**Pappert, J.**                                                          **November 5, 2024**

### MEMORANDUM

SCI Phoenix inmate Orlando Baez, proceeding *pro se*, sued four prison officials—Doctor Anthony Letizio, Physician Assistant Stephen Kaminsky, Correctional Health Care Administrator and Grievance Officer Britney Huner, and Grievance Officer Monica Savage—under 42 U.S.C. § 1983 for violating and conspiring to violate his First and Eighth Amendment rights.  Huner and Savage moved jointly to dismiss the claims against them in their official capacities, and Huner moved to dismiss the claims against her in her individual capacity.  The Court grants the motion as to the official-capacity claims, which are dismissed with prejudice.  The Court also grants the motion as to the claims against Huner for First Amendment retaliation and conspiracy to violate the First Amendment but denies the motion as to the Eighth Amendment claim and the claim for conspiracy to violate the Eighth Amendment.  The First Amendment claims against Huner are dismissed without prejudice, and Baez will be allowed to amend them consistent with this memorandum and the accompanying Order.

1

I

Baez has been diagnosed with numerous medical conditions, including systemic

lupus erythematous (lupus).  (Am. Compl. ¶ 14, ECF No. 31.)  He apparently received

treatment for these conditions from outside specialists and two members of the SCI

Phoenix medical staff—Letizio and Kaminsky—until December 6, 2021.  (*Id.* ¶ 16–19.)

On that date, Letizio and Kaminsky told Baez they would no longer treat any of his

medical conditions.  (*Id.* ¶ 19.)  Letizio and Kaminsky also told Baez that his "illnesses

and symptoms are not chronic issues," but rather Baez is "just a complainer who enjoys

filing grievances against medical."  (*Id.* ¶ 18.)

On March 21, 2022, Baez heard from his criminal-defense attorney that he had

been scheduled to attend an appointment with a rheumatologist at Temple University

Hospital's Lupus Center on January 16.  (*Id.* ¶ 45.)  Baez never attended such an

appointment.  (*Id.* ¶ 46.)  His most recent visit to the Temple Hospital Lupus Center

was December 16, 2021, though he twisted his knee exiting the transport vehicle and,

according to Temple's records, was not seen by a rheumatologist on that date.  (*Id.*

¶¶ 23, 97.)  Fearing that Letizio and Kaminsky had cancelled his lupus treatment

regimen, Baez filed a series of grievances seeking to learn why he was not taken to the

alleged January 16 appointment and whether he would continue to receive treatment

for lupus going forward.  (*Id.* ¶¶ 46, 62, 67, 70, 71, 76, 83.)[1]

Huner responded to at least two of Baez's grievances.  She wrote in response to a

March grievance that the Temple rheumatologist did not request to see Baez in

January, suggesting that Baez's concerns about the alleged January 16 appointment

---

[1]     Neither Baez nor Huner appended to their filings the grievances or responses thereto.

were unfounded.  (*Id.* ¶ 90.)  And she wrote in September that Baez had a rheumatology appointment scheduled for some date in the future, suggesting that his concerns about Letizio and Kaminsky having terminated his lupus care were unfounded.  (*Id.* ¶ 92.)

Huner's colleague, Grievance Officer Monica Savage, responded to at least four of Baez's grievances.  (*Id.* ¶¶ 82, 84, 85, 87, 89.)  In response to the March grievance, Savage wrote that no appointment was ever scheduled for January 16.  (*Id.* ¶ 82.)  In a June response, Savage wrote to Baez, "[y]ou were not denied an appointment in Jan. of 2022, you refused the follow-up visit."  (*Id.* ¶ 84.)  In July, Savage wrote again that no January appointment was ever scheduled and also that Baez had an upcoming rheumatology appointment.  (*Id.* ¶ 85.)  She also wrote that outside specialists like those at Temple can make recommendations, but only the SCI Phoenix staff can make final decisions about treatment.  (*Id.* ¶ 87.)  In response to the September grievance, Savage again told Baez that he had a rheumatology appointment upcoming.  (*Id.* ¶ 89.)

Baez also raised his concerns with Letizio and Kaminsky.  On April 12, Kaminsky told Baez that there was a future rheumatology appointment scheduled for him.  (*Id.* ¶ 53.)  On June 20, Letizio told Baez that there was never a January appointment for Baez, that the Temple doctors had never recommended such an appointment, and that Baez would be "sent soon" to a rheumatology appointment.  (*Id.* ¶ 69.)

While this back-and-forth was ongoing, Baez's sister called Temple Hospital and asked "whether [Baez's] lupus treatment was terminated by Temple Health or the Department of Corrections."  (*Id.* ¶ 94.)  Temple staff informed her that Baez was still

registered as a Temple patient and that their system did not reflect that his lupus

treatment had been terminated.  (*Id.* ¶¶ 97–98.)  A staff member also apparently told

Baez's sister that Temple had asked to see Baez back within three months of his

October 19, 2021 visit, which Baez says is also reflected in "medical reports" from that

date.  (*Id.* ¶¶ 90, 100.)  Baez alleges that he was denied lupus treatment for at least

seventeen-and-a-half months, which (if measured from January 2022) means he did not

receive lupus treatment again until May 2023 at the earliest.  (*Id.* ¶¶ 89, 103.)

## II

To avoid dismissal for failure to state a claim under Rule 12(b)(6), a complaint

must contain facts sufficient to state a claim that is facially "plausible." *Ashcroft v.*

*Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

(2007)).  A claim is facially plausible when the factual allegations permit a court to

make the reasonable inference that the defendant is liable for the alleged misconduct.

*Id.*  The "mere possibility of misconduct" is not enough; the complaint "must contain

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on

its face.'" *Id.* at 678–79 (quoting *Twombly*, 550 U.S. at 570).

Determining plausibility is a "context-specific task" requiring a court to use its

"judicial experience and common sense." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780,

786–87 (3d Cir. 2016)).  In making this determination, the court assumes well-pleaded

facts are true, construes those facts in the light most favorable to the plaintiff, and

draws reasonable inferences from them. *Id.* at 790.  The plaintiff need only allege

enough facts to "raise a reasonable expectation that discovery will reveal evidence" of

each element of his claim. *Connelly*, 809 F.3d, at 788–89.  But "[c]onclusory assertions

of fact and legal conclusions," are not entitled to the presumption of truth.  *Schuchardt*

*v. President of the United States*, 839 F.3d 336, 347 (3d Cir. 2016).  So "[a] pleading that

offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of

action will not do.'"  *Iqbal*, 556 U.S. at 678, (quoting *Twombly*, 550 U.S. at 555).

Importantly, "a *pro se* complaint, however inartfully pleaded, must be held to

less stringent standards than formal pleadings drafted by lawyers."  *Estelle v. Gamble*,

429 U.S. 97, 106 (1976).  The Court should construe the complaint liberally and "apply

the applicable law, irrespective of whether the *pro se* litigant has mentioned it by

name."  *Dluhos v. Strasberg*, 321 F.3d 365, 369 (3d Cir. 2003).  Still, *pro se* litigants

must allege sufficient facts to support a cognizable legal claim.  *Vogt v. Wetzel*, 8 F.4th

182, 185 (3d Cir. 2021) (internal citation omitted).

### III

Section 1983 provides individuals a cause of action against "person[s]" who

violate the individual's federal rights while acting "under color of state law."  42 U.S.C.

§ 1983.  The Court dismisses Baez's claims insofar as they seek to hold Savage and

Huner liable in their official capacities because official-capacity claims are effectively

claims against the state itself, and the state is not a "person" under § 1983.  *Will v.*

*Michigan Dep't of State Police*, 491 U.S. 58, 69–71 (1989).  For each of Baez's individual-

capacity claims against Huner, he must allege facts showing that he was deprived of a

federal right and that Huner was personally involved in that deprivation.  *Chavarriaga*

*v. New Jersey Dep't of Corr.*, 806 F.3d 210, 222 (3d Cir. 2015).

A

Baez first alleges that Huner violated his Eighth Amendment rights. "Prison officials violate an inmate's Eighth Amendment rights when they are deliberately indifferent to an inmate's serious medical need." *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). A serious medical need is one that "can be expected to cause substantial and unnecessary suffering" if untreated and that has either been diagnosed by a doctor or "would be obvious to a layperson." *Id.* (citation omitted).

Non-medical prison officials like Huner are normally entitled to defer to the judgment of medical professionals. *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004). So once a prisoner is under the care of a medical professional, a non-medical official is not chargeable with deliberate indifference "absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner." *Id.* A non-medical official who is or should be on notice of mistreatment or nontreatment has a duty to follow up on the inmate's complaints and "verify with the medical officials that the prisoner [is] receiving treatment." *Fantone v. Herbik*, 528 F. App'x 123, 128 (3d Cir. 2013) (quoting *Greeno v. Daley*, 414 F.3d 645, 655–56 (7th Cir. 2005)).

Baez has stated a plausible claim against Huner for deliberate indifference. Huner has not contested that she knew of Baez's lupus diagnosis and knew that his lupus would cause substantial and unnecessary suffering if untreated, making it a serious medical need. *See* (Def. Mot. to Dismiss 8–10, ECF No. 51.) Further, Baez's grievances put Huner on notice that Letizio and Kaminsky had allegedly cancelled his

6

lupus treatment regimen, including the January 16 appointment allegedly recommended by Temple rheumatologists.  Thus, she had a duty to follow up and verify with the medical staff that Baez was receiving treatment.  (*Id.* ¶¶ 90, 92.)

Huner's responses to Baez's grievances, on their own, could suggest that she followed up on his grievances and verify that the medical staff was not denying him treatment.  (*Id.*)  But both of her responses are inconsistent with statements by other SCI Pheonix staff and with Baez's medical records.  For example, Huner's statement that there was no January appointment because Temple didn't request it is contradicted by Savage's statement that there was no appointment on January 16 because Baez refused it.  (*Id.* ¶ 84).  Savage also reminded Baez that Temple doctors can only *recommend* appointments and treatment, while the final authority rests with SCI Phoenix medical staff.  (*Id.* ¶¶ 87.)  But if Temple never recommended a follow-up appointment, as Huner stated, it's unclear why Savage thought it relevant to tell Baez that Temple doctors can only make recommendations.

Baez also alleges that his medical records show that Temple requested to see him for a follow-up after the October appointment, further contradicting Huner's statement that Temple made no such request.  (*Id.* ¶¶ 90, 97–98, 100.)  Plus, Baez alleges that he actually went to the Temple Lupus Center at least once after the October 16 appointment—on December 16.  (*Id.* ¶ 22.)  And Temple may naturally have wanted to see Baez back after December 16, as Baez's allegations suggest that the appointment was cut short when he twisted his knee before entering the building.  (*Id.* ¶¶ 23, 97.)

Huner's September 2022 statement that Baez had an upcoming rheumatology appointment also appears dubious. (*Id.* ¶ 92.) Kaminsky had apparently told Baez the same thing in April 2022, (*id.* ¶ 53), yet Baez says the SCI Phoenix staff denied him treatment until at least May 2023, (*id.* ¶¶ 89, 103.)

The inconsistencies between Huner's grievance responses and those other sources[2] rase the plausible inference that Huner never actually followed up with SCI Phoenix medical staff once she learned that they might not be treating Baez's lupus. Baez has thus stated a deliberate-indifference claim against Huner.[3]

B

Baez next asserts a First Amendment retaliation claim against Huner, which requires (1) constitutionally protected conduct by the plaintiff; (2) an adverse action by the defendant that would "deter a person of ordinary firmness" from engaging in the protected conduct; and (3) a causal link between the protected conduct and retaliatory

---

[2]  Baez's complaint is scattershot, confusing and sometimes self-contradictory. The complaint, however, relies explicitly on written grievances, written responses thereto and written records, all of which Huner could have rightfully appended to her filings in order to clear up confusion. *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006). Huner having not done so, the Court is bound to draw reasonable inferences in Baez's favor. *Connelly*, 809 F.3d at 790.

[3]   Huner separately asked the Court to dismiss Baez's request for injunctive relief. (Def. Mot. to Dismiss 6–7.) But Baez has alleged that Huner was deliberately indifferent to his lupus for well over a year, and Baez says he fears that Huner will be deliberately indifferent again in the future. (Compl. ¶¶ 89, 103.) Baez has thus "allege[d] facts from which it appears there is a substantial likelihood that he will suffer injury in the future," which is all he must do at this stage. *Durham v. Kelley*, 82 F.4th 217, 226–27 (3d Cir. 2023) (reversing dismissal of claim for injunctive relief under the ADA where inmate alleged that he was denied medical accommodations for ten days and expressed fear that prison officials would continue to deny them in the future).

Baez's complaint also fairly includes a claim against Huner for conspiracy to violate his Eighth Amendment rights: it says "Huner … conspired in the denial of … treatment," (Compl. ¶ 103), and includes a section entitled "conspiracy against a right" on page 18. Huner did not address the conspiracy claim, and it's generally appropriate to allow § 1983 conspiracy claims past the 12(b)(6) stage when the plaintiff has stated a claim for the underlying violation of a right. *Thorpe v. City of Phila.*, No. 19-5094, 2020 WL 5217396, at *12 (E.D. Pa. Sept. 1, 2020) (citing *Gibson v. Superintendent of N.J. Dep't of Law & Pub. Safety*, 411 F.3d 427, 446 (3d Cir. 2005).

action.  *Palardy v. Twp. of Millburn*, 906 F.3d 76, 80–81 (3d Cir. 2018).  Courts in this

Circuit view First Amendment Retaliation claims by inmates "with skepticism" because

they are "easy to allege and difficult to prove."  *Jones v. Emps. of DOC*, No. 22-1190,

2024 WL 1258635 (E.D. Pa. Mar. 25, 2024) (quoting *Mack v. Yost*, 968 F.3d 311, 324 (3d

Cir. 2020)).

Baez's alleged protected activity is filing "multiple grievances" and lawsuits,

(Compl. ¶ 82), including those filed before the beginning of the conduct underlying this

suit, (*id.* ¶ 18).  And the alleged adverse action by Huner is her deliberate failure to

verify that Baez was receiving needed lupus care once she was on notice that he might

not be.[4]  (*Id.* ¶¶ 91, 94.)  Assuming those allegations are sufficient to satisfy the first

and second elements of his claim, Baez must show a causal connection between his

history of filing repeated grievances and Huner's failure to verify that he was receiving

lupus care.  To do so, he must allege either "unusual temporal proximity between the

protected activity and the allegedly retaliatory action," "a pattern of antagonism

coupled with timing," or a totality of circumstances suggestive of causation.  *Dondero v.*

*Lower Milford Twp.*, 5 F.4th 355, 361–62 (3d Cir. 2021).

As an initial matter, when a plaintiff's alleged protected conduct is filing a

grievance, courts typically reject retaliation claims against defendants who were not

---

[4]      The mere denial of an inmate's grievance is not a sufficiently adverse action for purposes of
First Amendment retaliation, *see Owens v. Coleman*, 629 F. App'x 163, 167 (3d Cir. 2015); *Lee v.*
*Mason*, 23-793, 2024 WL 4341352, at *15 (M.D. Pa. Sept. 27, 2024); *Alexander v. Forr*, No. 04-0370,
2006 WL 2796412, at *3 n.4 (M.D. Pa. Sept. 27, 2006), *aff'd*, 297 F. App'x 102 (3d Cir. 2008); *Nifas v.*
*Coleman*, No. 10-1486, 2012 WL 707063, at *7 (W.D. Pa. Feb. 9, 2012), *report and recommendation*
*adopted*, No. 10-1486, 2012 WL 707035 (W.D. Pa. Mar. 5, 2012), *aff'd*, 528 F. App'x 132 (3d Cir.
2013), so the Court understands Baez to allege that the adverse action was Huner's failure to
adequately investigate his grievances about being denied lupus care, rather than her ultimate denial
of those grievances, which the Court assumes are meaningfully different actions for First
Amendment-retaliation purposes.

the subject of those grievances. *Travillion v. Pennsylvania Dep't of Corr.*, No. 18-2075, 2023 WL 6796538, at *7 n.68 (M.D. Pa. Oct. 13, 2023) (collecting cases). And Baez has not plausibly alleged that Huner was the subject of any grievance or lawsuit until *after* she allegedly began failing her duty to verify that Baez was receiving lupus treatment. (Compl. ¶¶ 46, 62, 67.)[5]

Further, Baez has not alleged unusually suggestive temporal proximity, which normally means mere hours or days between protected conduct and adverse action. *See Miller v. Luzerne Cnty. Dep't. of Corr.*, No. 18-858, 2022 WL 22017274, at *4–5 (M.D. Pa. Mar. 14, 2022) (collecting cases). Baez's history of filing grievances and lawsuits began at least several months before Huner allegedly failed in her duty to verify that Baez was being treated for lupus. (Compl. ¶¶ 18, 90.) In addition, Baez has not alleged any pattern of antagonism by Huner nor any circumstances otherwise suggesting that she was motivated to retaliate against Baez for his history of filing grievances and lawsuits. The only allegations about Huner in the complaint are the responses she gave to Baez's grievances about his lupus care, which do not evince hostility toward Baez nor mention his grievance or lawsuit history at all. *See* (Compl.

---

[5]    Baez does state that he filed his March 30 grievance (which is the one that first put Huner on notice that Baez might not be receiving lupus care) against "Defendants collectively," (Compl. ¶ 83), but the Court reads "Defendants" here to refer to Letizio and Kaminsky only. The Pennsylvania Department of Corrections prohibits grievance officers from reviewing grievances that name them. *See* Commonwealth of Pennsylvania, Department of Corrections, Inmate Grievance System, Policy No. DC-ADM 804 at 1-6 (effective Feb 6, 2016). So the fact that Huner and Savage responded to the March 30 grievance, (Compl. ¶¶ 84, 90), suggests they were not named. Plus, the March 30 grievance was apparently what first put Huner and Savage on notice of the alleged denial of care, so it's not clear why Baez would have thought Grievance Officers Huner and Savage were culpable for the denial of care at that point.

¶¶ 90, 92.)  These allegations do not support any inferences as to *why* she allegedly failed to verify Baez's treatment.[6]

IV

A court should grant a plaintiff leave to amend a complaint "when justice so requires." Fed. R. Civ. P. 15(a)(2).  This rule expresses "a preference for liberally granting leave to amend" unless "amendment would cause undue delay or prejudice, or that amendment would be futile." *Oran v. Stafford*, 226 F.3d 275, 291 (3d Cir. 2000). The Court will allow Baez to amend his First Amendment retaliation claim.  He may do so on or before December 5, 2024.

BY THE COURT:

*/s/ Gerald J. Pappert*
Gerald J. Pappert, J.

---

[6]    Insofar as Baez also asserts a claim against Huner for conspiracy to violate his First Amendment rights, the Court will dismiss that claim.  Just as Baez has alleged no facts raising a plausible inference that Huner was motivated to take adverse action because of Baez's First Amendment-protected activity, he has also alleged no facts raising a plausible inference that Huner agreed with others to violate his First Amendment rights, which is a necessary element of a conspiracy claim.  *See Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 294 n.15 (3d Cir. 2018).