## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ORLANDO BAEZ,

               *Plaintiff,*

    v.

ANTHONY LETIZIO, et al.,

               *Defendants.*

CIVIL ACTION
NO. 23-1827

**Pappert, J.**                                            **June 3, 2026**

### <u>MEMORANDUM</u>

*Pro se* state inmate Orlando Baez sued four prison officials—Doctor Anthony Letizio, Physician Assistant Stephen Kaminsky and Grievance Officers Britney Huner and Monica Savage—for allegedly violating his civil rights.  The defendants move for summary judgment, and the Court grants their motions.

I

Between 2021 and 2023, Baez was an inmate at State Correctional Institution, Phoenix.  (Am. Compl. ¶ 2, Dkt. No. 31.)[1]  In the 1990s, a state jury convicted him of first-degree murder and sentenced him to death.  *Commonwealth v. Baez*, 720 A.2d 711, 718–19 (Pa. 1998); (Pl.'s Resp. to Order at 4, Dkt. No. 148) (noting he is on death row).  Baez has lupus, a chronic autoimmune disease that attacks healthy tissues in the body and damages organs.  (Am. Compl. ¶ 14.)  He also has many ailments "related" to or caused by his lupus including vision and hearing problems, burning, soreness and chronic pain.  (Pl.'s Resp. in Opp'n to Mot. for Summ. J. at 5, Dkt. No. 167); (Am.

---

[1]      He is now incarcerated at SCI, Somerset.  (Notice of Change of Address at 1, Dkt. No. 82.)

Compl. ¶ 14.)  While incarcerated, Baez has received significant medical treatment.

Doctors have prescribed him numerous medications, (Consultation Record at 5, Dkt.

No. 157-4) (listing prescribed medications), and since 2016, he's been to at least 120

"outside" doctor appointments, (List of Outside Appointments at 1–7, Dkt. No. 152-4).

He's seen a pulmonologist, ear, nose and throat specialist, urologist, radiologist,

audiologist, rheumatologist, endocrinologist, dermatologist, neurologist,

ophthalmologist and oral surgeon.  (*Id.*)  And he's received magnetic resonance imaging

(MRIs) and computed tomography (CTs) and physical therapy.  (*Id.*)

Baez's allegations largely concern rheumatology.  In October of 2021, he saw a

rheumatologist at Temple University's Lupus Center.  (Progress Notes at 367, Dkt.

No. 157-3.)  The doctor recommended that Baez have a follow up within sixty or ninety

days by the end of January of 2022.  (Consultation Record at 3, Dkt. No. 152-2); (Steven

Berney Letter at 89, Dkt. No. 173.)  Prison officials thus brought Baez back to the

Lupus Center in December of 2021, but it appears Baez did not actually see a

rheumatologist that day.  *See* (Am. Compl. ¶¶ 22–23, 97).  It is unclear why.  *See* (*id.*).

Baez alleges he should have been taken to a rheumatology appointment in January of

2022.  *See, e.g.*, (*id.* ¶¶ 45–46).  He filed multiple grievances alleging he was never

taken to a January appointment.  *See, e.g.*, (Initial Review Response at 2–5, Dkt.

No. 152-3).  In these grievances, he called prison officials racist, *see, e.g.*, (Grievance No.

Unknown at 48, Dkt. No. 170), accused them of committing hate crimes, *see, e.g.*,

(Grievance No. Unknown at 4, Dkt. No. 172), and sought damages ranging in amounts

from $250,000, *see, e.g.*, (Grievance No. 974014 at 6, Dkt. No. 152-3), to $1,000,000,000

*see, e.g.*, (Grievance No. Unknown at 30, Dkt. No. 172).  Grievance Officer Huner denied

at least one of Baez's grievances.  (Initial Review Response at 3.)  And Grievance Officer Savage told Baez that he had "no appointment scheduled" in January.  (Initial Review Response at 5, Dkt. No. 152-6.)

In May of 2022, Dr. Letizio requested Einstein Rheumatology see Baez, (Consultation Record at 5–6, Dkt. No. 157-4), and Baez then had rheumatology appointments in November of 2022 and March of 2023.  (*Id.*); (List of Outside Appointments at 6.)  Between his October of 2021, November of 2022 and March of 2023 rheumatology appointments, Baez continued to receive care for lupus, including a monthly injection of Methotrexate, which was "prescribed by [his] rheumatologist."  (Anthony Letizio Decl. ¶ 24, Dkt. No. 157-8); *see also* (Progress Notes at 282, Dkt. No. 157-3).  For pain, Baez was given "the maximum amount of Gabapentin" and also Tramadol, Robaxin and Pamelor.  (Stephen Kaminsky Decl. ¶ 9, Dkt. No. 157-7.)  And Baez's rheumatologist listed his "current medications" in 2022 as including (among Methotrexate and other medications) cequa eye drops, betamethasone, an inhaler, prednisone, tamsulosin and magnesium oxide.  (Consultation Record at 5, Dkt. No. 157-4.)

Baez received other medical care for his ailments related to or caused by his lupus.  For example, after he had vision problems, Baez saw an eye doctor who ordered him glasses.  *See, e.g.*, (Ophthalmologic Examination Record at 345, Dkt. No. 157-3).  Another eye doctor later examined Baez, finding he did not have a certain retinal disease.  (Consultation Record at 153–54, Dkt. No. 157-4.)  At one appointment, an eye doctor treated Baez for Sjogren's syndrome.  *See, e.g.*, (*id.* at 9).  In addition, when Baez said he had trouble hearing, prison officials sent him to an audiologist who gave him

3

hearing aids with instructions on how to use them. *See, e.g.*, (*id.* at 12–13); (Progress Notes at 239). Next, after Baez complained of hip pain, PA Kaminsky gave him topical and lidocaine ointments and conducted radiographic studies, (Stephen Kaminsky Decl. ¶ 24); (Anthony Letizio Decl. ¶ 26), and Dr. Letizio gave him steroids, (Stephen Kaminsky Decl. ¶ 23).

Baez sued Letizio, Kaminsky, Huner and Savage under 42 U.S.C. § 1983 alleging they were deliberately indifferent to his serious medical needs, retaliated against him for filing grievances and conspired to deprive him of his Eighth and First Amendment rights. This is just one of many lawsuits Baez has filed against prison officials. *See, e.g.*, *Baez v. Dep't of Corrs.*, No. 06-CV-04923, 2009 WL 1183910, at *1 (E.D. Pa. May 4, 2009) (alleging deliberate indifference to medical needs); *Baez v. Falor*, No. 09-1149, 2011 WL 5374986, at *1 (E.D. Pa. Nov. 8, 2011) (deliberate indifference to medical needs); *Baez v. Pa. Dep't of Corrs.*, No. 311 M.D. 2013, 2014 WL 1057999, at *3–4 (Pa. Commw. Ct. Mar. 18, 2014) (demanding to see a gastrologist); *Baez v. Correct Care Sols., Inc.*, No. 1854 WDA 2019, 2020 WL 7312042, at *1 (Pa. Super. Ct. Dec. 11, 2020) (medical malpractice); *Baez v. Jin*, No. 20-1809, 2022 WL 704318, at *1 (3d Cir. 2022) (per curiam) (inadequate medical treatment and retaliation); *Baez v. Faubert*, No. 790 C.D. 2023, 2025 WL 1982352, at *1 (Pa. Commw. Ct. July 17, 2025) (missed doctor's appointment).

## II

Federal Rule of Civil Procedure 56 directs a district court to grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). This

4

language compels judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A nonmoving party fails to satisfy this standard if "the record taken as a whole could not lead a rational trier of fact to find" in his favor. *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (citation omitted). The nonmoving party must identify "specific facts, as opposed to general allegations," establishing each element of his claim. 10A Charles Alan Wright et al., *Federal Practice and Procedure* § 2727.2, WESTLAW (database updated 2025).

## III

Section 1983 makes "liable" "[e]very person" who "under color of" state law "subjects" another person "to the deprivation of any rights, privileges, or immunities secured by the Constitution" and federal law. 42 U.S.C. § 1983. This provision does not contain substantive rights. *Graham v. Connor*, 490 U.S. 386, 393–94 (1989). It merely provides a cause of action for vindicating rights found in the United States Constitution or another federal law. *See id.*

## A

Baez claims Letizio, Kaminsky, Huner and Savage were deliberately indifferent to his medical needs. The Eighth Amendment, applicable to the States through the Fourteenth, provides that "cruel and unusual punishments" "shall not be . . . inflicted." U.S. Const. amend. VIII. A state official violates this prohibition if he shows "'deliberate indifference' to a substantial risk of serious harm to an inmate." *Farmer v. Brennan*, 511 U.S. 825, 828 (1994).

5

An Eighth Amendment claim based on medical care has objective and subjective elements. *See id.* at 834. Objectively, the prisoner must establish he has "serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Subjectively, the prisoner must demonstrate the prison official was deliberately indifferent—he knew of and disregarded the prisoner's serious medical needs. *Farmer*, 511 U.S. at 834, 838–39. The defendants primarily argue they were not deliberately indifferent.

Deliberate indifference is "stringent," *DiFraia v. Ransom*, 171 F.4th 622, 629 (3d Cir. 2026), requiring a culpability level higher than ordinary negligence, *Parkell v. Danberg*, 833 F.3d 313, 337 (3d Cir. 2016). Mere medical malpractice does not meet this high standard. *Montanez v. Price*, 154 F.4th 127, 141 (3d Cir. 2025). The prisoner must show "serious neglect or mistreatment." *DiFraia*, 171 F.4th at 629. He can offer proof he received a complete denial of care or grossly inadequate care. *See id.* An official does not act with deliberate indifference if he "respond[s] reasonably to" an inmate's needs, *Farmer*, 511 U.S. at 844, or makes a "good-faith" effort to treat him, *Goodrich v. Clinton County Prison*, 214 F. App'x 105, 112 (3d Cir. 2007).

To begin, the record would not permit a reasonable jury to find that Baez received a "complete denial of medical care" with respect to his lupus. *DiFraia*, 171 F.4th at 629 (citation omitted). Between October of 2021 and March of 2023, Baez had three rheumatology appointments and received monthly injections of Methotrexate, which was prescribed by his rheumatologist. He was also given Gabapentin, Tramadol, Robaxin and Pamelor to manage his pain. He received other medications such as prednisone and tamsulosin, and he was treated for his vision and hearing. Baez

6

concedes he was not completely "denied medical care." (Pl.'s Resp. in Opp'n to Mot. for Summ. J. at 5.)

Because he received some medical care for lupus, Baez must show the care was so grossly "inadequate" it amounted to cruel and unusual punishment. *DiFraia*, 171 F.4th at 629. The Court "presume[s]" he received "proper" treatment and then asks whether the defendants violated "professional standards of care in some extreme way." *Id.* (citation omitted). In deciding whether prison officials provided such grossly incompetent medical treatment, courts typically require prisoners to introduce medical evidence in the form of expert testimony or other "extrinsic proof." *Pearson v. Prison Health Serv.*, 850 F.3d 526, 536 (3d Cir. 2017). This would permit the jury to evaluate the "quality of [the] medical care" the prisoner received. *Id.*

Baez cannot show he received grossly inadequate care. *DiFraia*, 171 F.4th at 629. Again, he had three rheumatology appointments and received numerous, regularly administered, medications. He received extensive treatment for vision and hearing. Eye doctors gave him glasses, examined him and told him he did not have a certain disease and treated him for Sjogren's syndrome. And Baez received hearing aids from an audiologist. Baez cites no medical evidence—expert testimony or other "extrinsic proof"—from which a jury could evaluate the "quality of [the] medical care" he received. *Pearson*, 850 F.3d at 536. Because nothing indicates "what a competent doctor would have done" to treat Baez's lupus and "why the chosen course was not just incompetent but grossly so," *Phillips v. Tangilag*, 14 F.4th 524, 536 (6th Cir. 2021), Baez cannot show the defendants violated "professional standards of care in some extreme way," *DiFraia*, 171 F.4th at 629 (citation omitted).

7

Baez repeatedly asserts in response that the defendants "failed" to adequately "treat[]" his "lupus."  (Pl.'s Resp. in Opp'n to Mot. for Summ. J. at 9); *see* (*id.* at 5) (asserting defendants failed to provide the "lupus treatment prescribed and recommended by an outside specialist"); *see also* (Am. Compl. ¶ 105); (Pl.'s Second Resp. in Opp'n to Mot. for Summ. J. at 4, Dkt. No. 168).  But these conclusory assertions, unsupported by any medical evidence and contradicted by his own voluminous prison medical records, do not suffice.

Baez's real complaint appears to be that the defendants did not take him to a rheumatology appointment in January of 2022.  As an initial matter, Baez alleges in his complaint prison officials took him to a follow-up rheumatology appointment at Temple's Lupus Center in December of 2021.  But it is unclear why he did not see a rheumatologist that day.  More importantly, the fact that Baez did not go to a rheumatology appointment in January of 2022 does not by itself prove deliberate indifference.  A prison official may act with deliberate indifference if he delays "necessary" medical treatment based on a non-medical reason.  *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).  But Baez never explains why attending a rheumatology appointment in January of 2022 was "necessary to manage his [lupus]."  *DiFraia*, 171 F.4th at 631.  There is no record evidence the defendants "strayed well beyond the range of reasonable" treatment.  *Id.*

B

Baez also claims the defendants violated the First Amendment by retaliating against him for speaking.  The First Amendment protects "the freedom of speech," U.S. Const. amend. I, which "prohibits government officials from subjecting an individual to

8

retaliatory actions for engaging in protected speech," *Nieves v. Bartlett*, 587 U.S. 391, 398 (2019) (citation omitted).  To prove a First Amendment retaliation claim, Baez must show (1) he engaged in speech, (2) the defendants took an adverse action against him and (3) a causal connection exists between the two.  *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007).  Because Baez engaged in speech by filing grievances related to his lupus treatment, *Watson v. Rozum*, 834 F.3d 417, 422 (3d Cir. 2016), only the second and third elements are at issue.

Baez fails to show the defendants took an adverse action against him.  To suffice, an action must be "sufficient to deter a person of ordinary firmness from exercising" his constitutional right to speak.  *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001) (citation omitted).  Baez suggests Huner and Savage denied his lupus-related grievances.  But merely responding to and rejecting a grievance would not deter an inmate of ordinary firmness from continuing to exercise his First Amendment right to file grievances.  *Owens v. Coleman*, 629 F. App'x 163, 167 (3d Cir. 2015) (per curiam).  Baez also suggests Letizio and Kaminsky were deliberately indifferent to his medical needs.  But they weren't.  *Supra* III.A.

Nor can Baez prove causation.  This requires him to show his constitutionally protected conduct was a substantial or motivating factor in the challenged conduct.  *Watson*, 834 F.3d at 422.  Nothing in the record even remotely suggests Baez's mere act of filing grievances motivated Huner and Savage to deny his grievances.  And the record would not permit a jury to infer that Letizio and Kaminsky treated Baez the way they did because of his grievances.  Nothing connects Baez's grievances to the care he received.  In fact, he continued to receive adequate care in spite of his many grievances.

9

C

Finally, Baez claims the defendants conspired to violate his constitutional rights. A § 1983 conspiracy claim requires Baez to show (1) two or more people agreed to a single plan to deprive him of a constitutional right, (2) one of the coconspirators took an overt act to carry out the plan and (3) the overt act deprived him of a constitutional right. *Jutrowski v. Township of Riverdale*, 904 F.3d 280, 294 n.15 (3d Cir. 2018).

No reasonable jury could find the defendants violated Baez's Eighth or First Amendment rights so his conspiracy claim automatically fails. *Harvard v. Cesnalis*, 973 F.3d 190, 207 (3d Cir. 2020). In any event, Baez cites no record evidence showing two or more people agreed to deprive him of a constitutional right. He states only that the "Defendants 'collectively' came to a meeting of the mind." (Pl.'s Resp. in Opp'n to Mot. for Summ. J. at 8.) This conclusory statement, unsupported by record evidence, does not present a question for a jury.

D

As he has done in other cases, Baez complains the Court wrongly denied his motions for additional discovery "prevent[ing] him from effectively objecting" to the defendants' motions for summary judgment. *Baez*, 2022 WL 704318, at *3. He's wrong.

The Court set a scheduling order, stating the parties should complete fact discovery by the end of October of 2025. (Scheduling Order, Dkt. No. 112.) A few months later Baez moved for additional discovery, asking for certain documents, and the Court ordered the defendants to respond by stating "the extent to which" they had produced the documents Baez sought. (Order, Dkt. No. 141.) The defendants represented they had produced the documents Baez sought and Baez failed to offer any

evidence they did not, so the Court denied his motion.  (Order, Dkt. No. 146.)  In fact, the defendants produced more than 2,500 pages of documents during discovery.  *See, e.g.*, (Defs.' Resp. to Pl.'s Mot. for Additional Discovery at 2, Dkt. No. 144).  In opposing summary judgment, Baez does not explain with any specificity what "evidence" he needs to defeat the defendants' summary judgment motions.  And he attached 411 documents to his own summary judgment opposition.  *See* (Appendix, Dkt. No. 170); (Appendix, Dkt. No. 171); (Appendix, Dkt. No. 172); (Appendix, Dkt. No. 173).  In short, the record "indicates that Baez had ample time for discovery" and that the Court "took measures to ensure that Baez" in fact "received the discovery ordered."  *Baez*, 2022 WL 704318, at *3.

An appropriate Order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*

Gerald J. Pappert, J.

11